The next case for argument is 23-1462, G3D Technologies v. Microsoft. May it please the Court. Your Honors, this case presents a slightly different issue than the ones we've been discussing so far with respect to the 691 patent. Again, a related patent. I believe this is also a CIP of the 163, which was a CIP of the 771. So, related families. And here our complaint with the Board's decision is that it improperly substituted its own theory of obviousness for the one that was actually presented in the petition. The one that should have guided the litigation according to SAS. And the essence of your argument is they put more emphasis on ACOSTA than the petition did? Right, Your Honor. I mean, this appears in the Board's opinion at the bottom of page 65. It says, although the petition does not use the term alternative, we find that the petitioner's positions and arguments set forth with sufficient clarity. And they go on to develop this alternative theory of obviousness that relies on ACOSTA alone. Well, can I ask you, firstly, what is your position on what the standard of review is in this context? The other side, obviously, says repeatedly it's an abuse of discretion. Do you agree with that? This really amounts to a violation of the APA, Your Honor, which I believe you reviewed in the first instance. I don't think it's a discretionary issue if the Board acts in contravention to the APA in terms of its balance. If they had used the word alternatively or alternative argument, you wouldn't have a case anymore, would you? Well, if they had presented an alternative argument, then sure, I agree, Your Honor. How can this just be a case of a missing word? If the Board goes on and builds an argument and lays a clear path of reasoning that they use, why wouldn't that be enough? Because there was never an alternative theory, Your Honor. The Board just created this out of whole cloth. The Board rests a lot on ACOSTA. Their narrative of ACOSTA comes entirely from the petition, does it not? And there's nothing that the Board said in its description of ACOSTA that wasn't also included in the petition. Am I right about that? I don't recall every word of the Board's opinion to know whether they looked at ACOSTA independently of the petition or not. I get that. I need to go back and do a one-for-one, but they do a lot of citations to the petition when they're discussing ACOSTA. We have a number of cases that deal with this APA-type problem. One of the things we look at, I think, is whether or not you were prejudiced by it, whether you had an opportunity to respond. And I didn't see anything in your briefs, maybe I missed it, that you were somehow prejudiced by this, that you didn't know what the argument was, and therefore you didn't have an opportunity to respond. I'm not seeing that argument. I think we do address that in the brief, Your Honor, that this is something that appeared in the final decision, and we didn't even have the opportunity to address it. So, was there new evidence presented before the response and reply briefs came in? No new evidence, Your Honor. It's just the same references. The Board changed horses midstream, so to speak. Correct. The Board... Well, you made these arguments to the Board, right? I mean, aren't the same arguments you're making here about the change in ACOSTA from the petition an argument you made to the Board? No, I don't believe so, Your Honor. I don't believe we ever argued in front of the Board that ACOSTA alone isn't the case. The argument we had before the Board was Timota's method, the secondary reference. Timota's method doesn't teach selection of the right portions. I mean, our argument in front of the Board was that Microsoft's petition is based on the premise that somehow selecting fewer than all of the original slices satisfies the claim. That was the argument the petition was based on. And Dr. Bajaj showed how that's not going to meet the limitation of the claim. I can refer to our briefing, I think, where we showed the juxtaposition of Dr. Bajaj's images. This is page 34 of our brief, and the image comes from Dr. Bajaj's declaration. You see on the leftmost image, we have the total volume of interest. The middle image is essentially what Microsoft argued was taught by the ACOSTA-Timota combination. And the rightmost image is what the claim actually requires. And the Board essentially agreed with our construction of the claim. And so we could have referenced D3D on another basis, ACOSTA alone. But that was never Microsoft's case. Perhaps if we had known about that, we would have had an answer to that case. But we shouldn't have to defend against both Microsoft, which presented one case, and the Board, which developed its own case. That was not the case in the petition. What about hypothetically? I mean, here you've got a fairly robust proceeding before the PTAP. Didn't you have a hearing, and then have post-hearing briefs, and so forth? So the Board can often come up with a claim construction that frankly differs from either what the petitioner or the patent owner put forth. So the nature of the arguments, not the bases or the grounds included in the petition, but the nature of the arguments can be fluid during a proceeding hypothetically, right? Because if the claim construction changes, then you've got to shift the emphasis for what the prior art said or what you're looking at the prior art. Is that a non-starter in your view under the APA? No, I agree with you, Your Honor, and this Court has had several cases in which the Board did adopt a different construction. And in fact, in this case, they did adopt a different construction. And they had post-hearing briefs. And we had post-hearing briefings on construction. We're not arguing with the Board's construction. We're arguing with what happened after the construction and the manner in which they applied the prior art, which was not the basis for the original obviousness allegations contained in the petition. The Board has flexibility. And just to go back to a question I asked a few minutes ago, I think I found what I was remembering, which is the Board dealt with these arguments, right? I mean, at 62 of the Board opinion, they say that you're taking the position that it's inconsistent, ACOSTA's inconsistent with the petitioner's contentions. So you raised this matter with the Board and they dealt with it, right? Yes, I see what you're saying, Your Honor. But that, I believe, is referencing a different argument. Oh, really? Okay. That's the argument about the portion of the image that shows up in the Tomoda reference. So the Board had a theory that they had advanced at the institution stage, going to your point about how arguments can be fluid, that there was selection of a certain part of the image and this part of the image showed up in the full slices that ultimately get presented  and that was what this discussion was about. And yes, we addressed that. But that's not the ultimate conclusion the Board reached. The ultimate conclusion the Board reached was, well, we'll just look at ACOSTA alone. Let me ask you, obviously, there's no question that you were confronted with both ACOSTA and Tomoda by Microsoft in their combination argument. Clearly they say it's the combination. And did you, I might have read it, I forgot it, I apologize, but did you kind of, in that context, in the context of that argument, did you sort of say, okay, no, here's the problem with ACOSTA and here's the problem with Tomoda. Did you sort of grapple with ACOSTA by itself in the course of the Board proceedings? I know we critiqued ACOSTA in some respects, your honor, but really we grappled with the combination of the reference and the combination as proposed by Microsoft because the fault lies in that combination. Microsoft looked to Tomoda to say how the portions would be selected. And it's that part of the claim that we addressed. We're saying, fine, if you're going to rely on Tomoda for that part of the selection, you have to live with the consequences of Tomoda. And that leads to the selection of entire slices, not portions of those slices as required in the claim. That's how we addressed the combination, your honor. And where is that specifically in your... Well, I referenced the section... I'm being a little lazy asking you. No, no, no. I'm happy to address it, your honor. Let me find it for you in the appendix. Let me ask you this, Mr. Fine. I can find that. I shouldn't ask you to have to rummage around at this point. It actually begins, I think, on about 517 of the appendix, your honor. 517? Let me ask you, what you seem to have here, and you alluded to it when you pointed to those pages at the beginning of the argument, what do we do as a general proposition? This is sort of a hypothetical, I guess. And maybe it's already been presented. The board has a case where they have references A and B. The petitioner says it's a combination of A and B. The board really hears all the arguments on A, all the arguments on B, and it comes to the conclusion, you know, we understand what they're saying about A, we understand what everybody's saying about B, but in our considered judgment, really A handles it alone. That's what we have here. Off the top of my head, that doesn't strike me as, at least in a case like this where you have a fully developed record of everything, as rising to the level of an APA violation. Where am I wrong on that? I think SIS addresses that, your honor. The Supreme Court says that what guides the litigation is the petition. It's not the director's role through the board to curate the petition and pick out and cherry pick better arguments. But is the director, no, you've correctly said what I think SIS says, but is the director sort of, or is the board, I guess, simply to sit there and feel iron bound that it can't deviate in the slightest and call it as it sees it based on a very complete record? They have an option, your honor. They can always ask the parties for briefing on that issue. If they want to stretch to some other alternative, they can ask for briefing. In fact, they did so here when it comes to construction. But they didn't ask us to brief the idea of, hey, what about Acosta alum? But they used, I think I said before, and tell me if I'm wrong, I think all of their references, their basis for relying on Acosta was what was included in the petition. Even if that's true, your honor, and I don't remember, but even if it's true, they didn't rely on the way Microsoft put it together. They didn't give us a chance to address that argument. Acosta alone teaches things. And SAS, I think, follows from the Chenery Doctrine, where the Supreme Court tells us that when it comes to administrative actions, you rely upon the petitioners to guide that litigation. Let me go back to one point. I asked earlier about the standard of review. On page 20 of the red brief, they cite the Erickson case. I don't disagree with Erickson. And so do you agree that the standard of review here is an abuse? Abuse, yes. I'm concerned that we do have a number of cases that have come before us and seem to be coming where the board doesn't set out enough reasoning for us to sometimes even have a meaningful review. I'm especially concerned when the board does not allow a party to answer or to discuss new theories that are presented or new evidence. And we get those cases, and they're a big concern to me. In this case, if I read carefully back through the final written decision, would I find a clear pathway that gives me the reasoning that the board followed? Because if the answer is yes, then I would expect that you should have been aware or known of that pathway. And that would have been your notice at that point to say, hey, wait a minute, something's going on here. I haven't had a chance to respond and to request that you be given that opportunity. Does such a pathway exist? And I believe our case, if you want to look at that later, it's Nuvasi. What do you say to that? So I appreciate what you're saying, Your Honor. The pathway that the board lays out is this alternative theory. We don't believe that alternative theory exists in the petition. We think the board was constructing it of their own accord, and that's where the error is. Okay, thanks. Thank you. Good morning, Your Honors. May it please the Court, Sarah Jack on behalf of the Appellee Microsoft Corporation. This appeal boils down to the narrow issue whether the board was within its discretion to read Microsoft's petition as it did, and as a corollary to that, reject D3D's reading. It clearly was within its discretion, as explained in extensive detail across 20 pages of the board's decision, and also as set out in the petition. Specifically, the board found that Microsoft's petition relies on both Acosta and Tomoda as disclosing the selecting portions limitation as construed. This is evident from the petition's discussion. But the question here is whether or not Microsoft's emphasis of portions of Acosta versus Tomoda was consistent with what the board did in its ultimate analysis. Certainly, Your Honor, I think that it was. If we look specifically to section 1E of the petition, which is on appendix 194, I think you'll find the very rationale that the board relied on contained in section 1E, which is the limitation at issue. Section 1E begins by explaining that Acosta's 3D sampling probe would have been used to select in response to an input, and then further says Tomoda's method for displaying sectional images. The question is whether the other side was ever given the opportunity or had the opportunity to address this new grounds or a new basis of attributing the selecting element to Acosta. It seems to me that Microsoft's theory all along was that the selection method was limited to Tomoda. So that's the way that D3D has argued this case throughout, Your Honor, but I don't think that's what Microsoft conveyed in its petition. 1E is fairly clear, even at the beginning, that Acosta's probe would be used for selecting. That stems, of course, comes after the lengthy discussion leading to that point of how Acosta operates, which the board credited. Just real quickly, give me the citation in the petition that addresses the Acosta Plus theory, that Microsoft relies on Acosta also for the selection element. Yes, Your Honor. I'm believing Appendix 194 to 195, which is the start of the discussion of Element 1E, which relates to selecting. The first couple of paragraphs talk about Acosta's selecting operation. I think some context here can be valuable because below, D3D had some claim construction arguments surrounding the idea of further processing, which the board ultimately found had no patentable weight, but which Microsoft relied on Tomoda as evidence of that processing to the extent it was an element that needed to be proven. Let me ask you, in response to Judge Rainer's question, you cited 194 and 195 in the appendix, is what you're saying, and if I mischaracterize what you're saying, please correct me, is what you're saying, look, we came in and argued a combination of Acosta and Tomoda, point one. Point two, though, if you look at our briefing and the petition and so forth and arguments, there's enough there to show Acosta alone doing the job. Is that what you're saying? Yes, Your Honor, at least as the board construed the selecting limitation. In particular, these paragraphs of Section 1E, 194, 195, this section discussing the element, lays out exactly how in the petition, so D3D certainly was on notice of it and had the opportunity to address what Acosta said there. So that's your argument. Basically, we said there's a combo here, but when you look at what we say about H1, there's enough there for the board to put its hat on about the Acosta. Yes, Your Honor. Certainly, and I as I was saying before, Your Honor, Tomoda and the board credited this, although it found that the fore further processing limitation had no patentable weight, the board went on to credit the idea that if it did have patentable weight, Tomoda had added value in that regard. And I would just like to mention, Your Honor, the board discussed real time and viewing the Acosta lump or Acosta plus Tomoda arguments as alternatives. And I think that if you read Section 1E, which is on these pages, 194 to 199 carefully, you'll see that Microsoft starts where you would start discussing a limitation at the beginning and says Acosta selects, and then goes on and discusses Tomoda's further processing. And at the end says also, at least for the reason that Tomoda selects entire slices, a subset of the original slices. That is another ground on which the limitation is met. I think that the board was completely within its discretion to find alternative arguments in these pages of the petition and rely on that in holding the claims invalid. Was there anything that the board said in its description of Acosta when it described Acosta and led it to conclude what it did on Acosta? Was that not from the petition? Was there anything that they pulled out of Acosta that was not included or cited in the petition? Not that I'm aware of, Your Honor. I have not admittedly checked every citation specifically, but I do know that at least a substantial majority, if not all of it, was mentioned in the petition. Jack, I have one question. This is really just for my own edification, if I need the edification. If you look at the appendix at 189, we have this figure here, 15. And this is, I want to make sure I understand exactly what this figure shows. We have these three blocks in there, and those represent Acosta probes, correct? That's right, Your Honor. Each one of those is a probe. That's my understanding. And the lines that we see in the background, the vertical line and the two horizontal lines going off to the side, those are showing that these probes are existing within the volume of interest. That's right, Your Honor. Okay. Alright. That's all. I just wanted to make sure I understood that. Well, I'm happy to answer any further questions, Your Honor. Thank you. Your Honors, I think this case comes down to what you were looking at previously with my learned friend at appendix 194. With respect to this limitation, this is the case they put in front of the board. Acosta's 3D sampling probe would have been used to select a region of interest in response to an input, and Tomoda's method would have been used to select portions of the original 2D slices corresponding to the volume of that cursor. So Acosta selects, and what does it select? Look at Tomoda. Well, Tomoda selects slices. And the claim says portions of slices. And the board's own opinion says that construction is not consistent with Microsoft's argument. Can I ask you, is it your view under the law that given your view of this case that the problem was that you didn't have an opportunity to respond? So you're seeking a reversal here, but you're really asking for a remand, right? Ordinarily a remand, Your Honor, but as we say in the briefing, Microsoft doesn't contest and never contested before the board that D3D's position was the correct position when it came to Tomoda. So you don't have to send it back. You can decide this case. What do you mean? I don't understand your answer. Microsoft has never disagreed that Tomoda selects entire slices. In fact, you just heard it here this morning. And that's not portions. And even the board's own opinion says that's not portions according to the claim. So ordinarily, yes, you send them back for cases like this, but here you don't have to. Thank you, Your Honors.